RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0313P (6th Cir.)
File Name: 00a0313p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DOROTHY MACKEY,
            *Plaintiff-Appellant,*

            *v.*

UNITED STATES OF AMERICA,
            *Defendant-Appellee.*

No. 99-4022

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 96-00140—Susan J. Dlott, District Judge.

Argued: August 3, 2000

Decided and Filed: September 12, 2000

Before: NELSON and NORRIS, Circuit Judges; MATIA,
District Judge.*

_____

## COUNSEL

**ARGUED:** Joanne Jocha Ervin, Dayton, Ohio, for
Appellant. Robert D. Kamenshine, UNITED STATES
DEPARTMENT OF JUSTICE, CIVIL DIVISION,

---

*The Honorable Paul R. Matia, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

APPELLATE STAFF, Washington, D.C., for Appellee. **ON BRIEF:** Joanne Jocha Ervin, Dayton, Ohio, for Appellant. Daniel L. Kaplan, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Appellee.

————————

## OPINION

————————

ALAN E. NORRIS, Circuit Judge. This appeal comes to us for the second time. In 1998, this court reversed an order of the district court holding that the individual defendants named in the complaint were not acting within the scope of their employment. On remand, the district court entered an order substituting the United States as defendant and dismissing the case pursuant to the *Feres* doctrine, which bars claims under the Federal Tort Claims Act ("FTCA") for injuries that arise incident to military service. *See Feres v. United States*, 340 U.S. 135 (1950).

On appeal, plaintiff Dorothy Mackey maintains that the *Feres* doctrine does not apply to claims involving intentional torts. She also argues that, even if the doctrine is generally applicable to such claims, it does not apply to this case.

### I.

The circumstances giving rise to this case are fully set forth in our earlier opinion and we will not restate them in detail here. *See Mackey v. Milam*, 154 F.3d 648, 649-50 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 2393 (1999). Briefly, Mackey filed suit in state court against her superior officers in the United States Air Force, alleging sexual harassment. When the U.S. Attorney certified that the officers were acting within the scope of their employment, the case was removed to federal court and the United States was substituted as defendant. The district court determined that the officers were not acting within the scope of their employment, but certified that decision for interlocutory appeal. We reversed,

prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions. *See id.* In the present case, the same sort of testimony would be required. *See also Major v. United States*, 835 F.2d 641, 645 (6th Cir. 1987) (applying *Feres* doctrine to claims that military officers failed to follow regulations prohibiting on-base consumption of alcohol because a challenge to the officers' actions would require them to testify about military decisions relating to alcohol on base as well as disciplinary policies for infractions of rules).

Mackey also maintains that any potential harm to military discipline cannot overcome the actual harm to the public interest of denying her a remedy for the conduct alleged in this case. The government counters by pointing out that application of the immunity doctrine neither minimizes the seriousness of the alleged sexual misconduct, nor completely deprives Mackey of a remedy in light of the availability of discipline through the Uniform Code of Military Justice, 10 U.S.C. § 801, *et seq.*, and the existence of benefits programs available to injured service members. *See Smith v. United States*, 196 F.3d 774, 778 (7th Cir. 1999), *cert. denied*, 120 S. Ct. 1676 (2000). The logic of Mackey's argument is also undermined by *Feres* progeny in general. *See, e.g., Shearer*, 472 U.S. at 53 (implying that interest in military discipline overcomes public interest in preventing kidnaping and murders).

Finally, Mackey appears to argue that *Feres* should be overruled. While there are many arguments available to criticize the *Feres* doctrine, *see, e.g., Johnson*, 581 U.S. at 692-701 (Scalia, J., dissenting), this court cannot overrule Supreme Court precedent. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982).

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

holding that the officers were acting within the scope of their employment when they allegedly harassed Mackey. *See id.* at 652.

On remand, the district court entered judgment for the United States, stating:

> This matter is before the Court upon the mandate of the [Sixth Circuit]. Based upon such mandate, the Court finds that the individual defendants were acting within the scope of their employment. Therefore, the United States is hereby substituted as the defendant in this case, and the matter is not remanded to the Ohio state court. Under the *Feres* doctrine, "the Government is not liable where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950).

## II.

The FTCA waives the United States' liability for tort claims, subject to certain exceptions. *See* 28 U.S.C. §§ 2674, 2680. The "*Feres* doctrine" refers to the Supreme Court's conclusion that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146.

With respect to the claims that are at issue in this appeal, Mackey makes two major arguments.[1] First, she argues that the *Feres* doctrine does not apply to intentional torts. Second, she argues that, even if the *Feres* doctrine does apply to intentional torts, it should not be applied under the circumstances of this case. Neither argument is persuasive.

---

[1] The only claims at issue in this appeal are those for intentional infliction of emotional distress, sexual harassment, and sex discrimination. *See* 28 U.S.C.A. § 2680(h) (providing that the FTCA does not apply to "[a]ny claim arising out of assault, battery, . . . or interference with contract rights").

Cir. 1984); *Mollnow v. Carlton*, 716 F.2d 627, 628 (9th Cir. 1983); *Jaffee v. United States*, 663 F.2d 1226, 1235 (3d Cir. 1981) (en banc); *Citizens Nat'l Bank of Waukegan v. United States*, 594 F.2d 1154, 1157 (7th Cir. 1979); *Rotko v. Abrams*, 455 F.2d 992 (2d Cir. 1972) (per curiam).

### B. Application to Circumstances of this Case

Mackey also argues that, even if the *Feres* doctrine applies to intentional tort claims, the underlying principles of the doctrine do not apply to her case. Her argument focuses on the potential impact to military discipline.

According to Mackey, allowing her suit would not negatively impact military discipline because the need for such discipline has never been adequately supported. Despite her arguments, the Supreme Court has held that military discipline is a matter of concern and that allowing lawsuits would impair such discipline. *See Shearer*, 473 U.S. at 57; *Johnson*, 481 U.S. at 690-91.

Mackey also argues that her claims do not implicate issues of judgment, discretion, or command because the activities she complains of "simply cannot be viewed as acceptable in any fashion." She maintains that she is not challenging any work assignments, discipline, or evaluations, nor is she challenging her superiors' authority to give her orders. Review of the Supreme Court's concerns with respect to military discipline demonstrates that this case would impact military discipline. In *Shearer*, a serviceman was kidnaped and murdered by another serviceman who had been convicted of manslaughter while assigned to a different Army base. *See* 473 U.S. at 53-54. The deceased serviceman's mother sued the Army alleging that it was negligent in how it dealt with the previously convicted serviceman. The Court found that the allegations in *Shearer* went directly to the management of the military, calling into question "basic choices about the discipline, supervision, and control of a serviceman." *Id.* at 58. The Court pointed out that the claims would require officers to testify as to each other's decisions and actions, meaning that commanding officers would have to stand

## A.  Application to Claims of Intentional Torts

Mackey argues that the *Feres* doctrine applies only to claims of negligence.  She correctly points out that the situations addressed in *Feres* involved claims of negligence.  She further maintains that the doctrine is derived from the first exception to the FTCA, which excludes from suit "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation."  28 U.S.C.A. § 2680(a) (1994).  Mackey's implicit argument seems to be that if the *Feres* doctrine is derived from an exception using terms of negligence, it must be targeted solely at negligence.

Nothing in *Feres* suggests that it is derived from the "due care" exception to the FTCA.  Instead, the *Feres* doctrine stems from the exception for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war."  28 U.S.C.A. § 2680(j); *see Fleming v. United States Postal Serv.*, 186 F.3d 697, 699 (6th Cir. 1999) (indicating that the *Feres* doctrine is a broadening of the section 2680(j) exception).

Furthermore, the rationales behind the doctrine are not limited to situations of negligence.  In *United States v. Shearer*, 473 U.S. 52 (1985), the Court identified the underlying rationales as:  (1) the peculiar and special relationship of the soldier to his superiors; (2) the effects of the maintenance of such suits on discipline; and (3) the extreme results that might obtain if suits under the FTCA were allowed for negligent orders given or negligent acts committed in the course of military duty.  *See id.* at 57 (quoting *United States v. Muniz*, 374 U.S. 150, 162 (1963)).  A later case, *United States v. Johnson*, 481 U.S. 681 (1987), set out the underlying rationales as:  (1) the distinctively federal character of the relationship between the government and members of its armed forces; (2) the existence of generous statutory disability and death benefits; and (3) the impact of allowing lawsuits, which would involve the

judiciary in sensitive military affairs at the expense of military discipline and effectiveness.  *See id.* at 689-91.

The Supreme Court has also applied the *Feres* doctrine to more than just negligence claims.  Specifically, *Feres* has been applied to claims of constitutional violations alleged in *Bivens* actions.  *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 303-04 (1983) (involving claim of race discrimination).  In *Chappell*, the Court indicated that:

> The special nature of military life – the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel – would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command.  Here, as in *Feres*, we must be "concern[ed] with the disruption of '[t]he peculiar and special relationship of the soldier to his superiors' that might result if the soldier were allowed to hale his superiors into court."

*Id.* at 304.  The Court also indicated that Congress had not provided a damages remedy for claims by military personnel of violations of constitutional rights.  *See id.*  Putting together the "unique disciplinary structure" of the military and Congress' (lack of) activity in the field, the Court held that military personnel did not have available to them a *Bivens*-type remedy against their superior officers.  *See id.*  While Congress' activity in the field is different with respect to Mackey's claims as opposed to *Bivens*-type claims, the rationale expressed in *Chappell* regarding the special nature of military life applies equally to the present case.

There is no authority in the FTCA or Supreme Court precedent to apply the *Feres* doctrine only to claims of negligence and not to claims of intentional torts.  We join with the other United States Courts of Appeals that have addressed the issue and hold that the *Feres* doctrine applies to intentional torts.  *See Bois v. Marsh*, 801 F.2d 462, 471 (D.C. Cir. 1986); *Trerice v. Summons*, 755 F.2d 1081, 1084-85 (4th Cir. 1985); *Stubbs v. United States*, 744 F.2d 58, 59-61 (8th